Patricia E. ALLEN, Appellant,

v.

James T. ALLEN, Appellee.

No. 08–82–00009–CV.

Court of Appeals of Texas,
El Paso.

Dec. 29, 1982.

Opinion on Motion for Rehearing
Feb. 16, 1983.

Stephen A. Hines, Merkin, Hines & Baker, El Paso, for appellant.

Larry H. Schwartz, Schwartz, Earp, McClure, Cohen & Stewart, El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal by writ of error from an order changing the managing conservatorship of a minor child from the mother to the father where there was no semblance of a fair trial afforded the mother. We will take jurisdiction of this proceeding and reverse and render judgment that the Appellee take nothing.

The parties were divorced in August, 1974, and the mother, Patricia Allen, was named Managing Conservator of the child Rusty, a boy who was then five years of age. The father, James Allen, was named Possessory Conservator. This was in Cause No. 73–5540 on the docket of the district court in El Paso.

What transpired next is without proof or showing in the record, but is asserted in each of the briefs filed by the respective parties. It is thus made to appear that the mother and the child had become residents of California and on October 4, 1980, the two parties entered into a written agreement whereby the child Rusty was to reside with the Appellee father in El Paso for the 1980–1981 school year. The agreement provided that the mother would continue to be the Managing Conservator and that none of her rights would be limited except for those specifically in the agreement and further that the child would be returned to the mother upon her written request. While the child was residing with his father, the child was institutionalized at an adolescent psychiatric treatment center in El Paso.

Apparently, when the mother learned of this, she, in April, 1981, filed a petition for writ of habeas corpus to recover possession of the child, the proceeding being filed under Cause No. 81–2942 in the same district court out of which the divorce arose. A hearing was set on the petition for writ of habeas corpus for May 11, 1981, and citation to that proceeding apparently was served on the husband.

According to the transcript of the proceedings before us, an unsworn motion to modify the parent-child relationship was filed by the husband on April 7, 1981, under the cause number of the original divorce suit in the original divorce court, that being Cause No. 73–5540. No citation was issued as a result of that petition. On May 4, the husband filed an unsworn amended motion to modify amplifying the grounds for the relief prayed for and requesting a temporary restraining order that the mother be restrained from moving the child from the jurisdiction of the court. A hearing was set on such order, both on the question of a temporary injunction and the question of the issuance of temporary orders, for May 11, 1981, at the same time which had been set for the hearing on the habeas corpus. The citation, notice of the temporary restraining order and notice to show cause were not served upon the mother. There appears a certificate on the amended motion to modify that a copy of the same was hand delivered to Attorney Stephen A. Hines, the attorney for the wife in the habeas corpus proceeding.

According to the statements contained in both briefs, the mother came from her home in California to El Paso on Friday, May 8, 1981. She secured the release of her child from the adolescent psychiatric treatment center, and at that time she departed for the State of California with the child. Whether the taking of the child from the center was peaceful or violent we do not know, as the briefs do not agree at this point.

For the proceedings on Monday, May 11, 1981, we are favored with a statement of facts. Attorney Stephen Hines represented the mother, and Attorney Larry Schwartz represented the father. The statement of facts is copied verbatim, and is as follows:

THE COURT: Are both sides ready to proceed?

MR. SCHWARTZ: Movant is ready, your Honor.

THE COURT: Mr. Hines?

MR. HINES: I'm not sure what we're here for, your Honor.

THE COURT: Didn't you set this case for a hearing?

MR. HINES: That was for a habeas corpus, your Honor, and I have a motion for nonsuit—

THE COURT: I will deny it.

MR. HINES: You will not hear this motion?

THE COURT: I will deny it, Mr. Hines. Your client adhered to self-help.

MR. HINES: Your Honor, my client is not here.

THE COURT: All right, my question is, did she avail herself of self-help? She filed a habeas corpus and then she absconded with the child. She's not here, the child is not here. Did she avail herself of self-help and take the child from the jurisdiction of the Court?

MR. HINES: I assume so.

THE COURT: You don't know?

MR. HINES: I don't have personal knowledge of it.

THE COURT: Are you aware that she picked up the child on Friday?

MR. HINES: I was aware she did pick up the child.

THE COURT: Did she apprise you of that fact?

MR. HINES: I was aware that she was going to talk to the child on Friday.

THE COURT: Did she call you after she took custody of the child?

MR. HINES: I have not spoken with her.

THE COURT: The writ of habeas corpus will be denied. The Court will enter an order giving Mr. Allen custody of the child.

MR. HINES: Your Honor, on what grounds?

THE COURT: On the grounds that she invoked the jurisdiction of this Court in view of the fact that she filed a writ of habeas corpus and a hearing was set; she avails herself of the law of self-help by removing the child from this Court and the jurisdiction of this Court without authorization until this Court could have rendered a proper decision as to what is in the best interests of the child. On those grounds I am denying it. She cannot complain and come in here with dirty hands and expect this Court to do equity on her behalf.

MR. HINES: You will do this without hearing any testimony?

THE COURT: That's right, Mr. Hines. Mr. Allen can now go to California and invoke the jurisdiction of this Court and try and enforce this order. I don't know whether he will be successful or not, but this is something to be seen in the future. So draw up the order.

Based on this record, the trial court, on May 12, entered its order in the two cause numbers reciting that on the 11th day of May, 1981, came on to be heard Patricia Allen's application for writ of habeas corpus and motion for nonsuit and James T. Allen's motion to modify the managing conservatorship. The order recites that Allen appeared in person and by his attorney of record Larry Schwartz, and that Patricia Allen appeared by and through her attorney of record Stephen Hines. The court further found that it had jurisdiction of the cause, the subject matter of the cause and of all the parties, and all parties entitled to citation were properly cited. The court further found that Mrs. Allen's application for writ of habeas corpus and motion for nonsuit should be denied, and the court found that the child had resided in El Paso, Texas, with the father since July 5, 1980, and that the material allegations contained in Mr. Allen's motion to modify were true and that the following orders were in the best interest of the child. The court then ordered that Mrs. Allen's application for writ of habeas corpus and motion for nonsuit were denied, that Mrs. Allen be removed as Managing Conservator and that Mr. Allen be,

and was appointed Managing Conservator of the child with all the rights, privileges, duties and powers of a parent, and all costs of the proceeding were adjudged against Mrs. Allen. Judgment appears to be signed for approval as to form by Mr. Schwartz as attorney for Mr. Allen and is unsigned by the attorney for Mrs. Allen.

The petition for writ of error regarding Cause No. 73–5540 which were the proceedings and the order changing the managing conservatorship of this minor child was filed November 12, 1981, and is now before us.

■ We are first confronted with the serious question presented by the Appellee's motion to dismiss this appeal for want of jurisdiction. The motion asserts that Mrs. Allen by her attorney of record participated in the actual trial of this case in the trial court, contrary to the provisions of Article 2249a Tex.Rev.Civ.Stat.Ann. (Vernon Supp. 1982). There are numerous cases which hold that the article is mandatory, jurisdictional, and cannot be waived. It mandatorily precludes a review by means of a writ of error to an appellant who participated in the actual trial of the case. *Nutter v. Phares*, 523 S.W.2d 292 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.); *Hylton v. Bullock*, 583 S.W.2d 675 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.); *Lewis v. Beaver*, 588 S.W.2d 685 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). The Appellee particularly relies on the *Lewis* case, as there the court found there was error on the face of the record which showed that the trial court had no personal jurisdiction of the defendants. Yet despite these errors on the face of the record, that appellant could not challenge by writ of error the judgment where the trial court record showed that the appellant had appeared by and through his attorney. It is the position of the Appellee that the Appellant's attorney participated in the entire hearing which led up to the judgment that the Appellant is now complaining of and that there would be a direct violation of Article 2249a for this Court of Appeals to assume jurisdiction over this appeal by writ of error.

On the question of what constitutes the "actual trial of the case" within the meaning of Article 2249a, the leading case is *Lawyers Lloyds of Texas v. Webb,* 137 Tex. 107, 152 S.W.2d 1096 (1941). There, the court stated the following:

> The *actual trial* of a case, as ordinarily understood by the legal profession, is the hearing in open court, leading up to the rendition of judgment, on the questions of law, if the case is disposed of on the question of law, or on the questions of fact, if the final judgment is rendered on the facts. The statute was intended to cut off the right of appeal by writ of error of those who participate in the hearing in open court in the trial that leads to final judgment. It was not intended to cut off the right of those who discover that a judgment has been rendered against them after the judgment has been rendered, and who participate only to the extent of seeking a new trial.

The court explained the reasons for making the distinction between those who participate in the hearing in open court leading up to the rendition of judgment and those who do not so participate. Those who participate in the trial are familiar with the record and are therefore in a position to prepare the appeal on short notice, whereas those who do not so participate in the actual trial are therefore unfamiliar with the record and may need additional time in which to familiarize themselves with the record. The Supreme Court went on and held that the mere filing of a motion for new trial was not such a participation in the actual trial as to defeat the plaintiff in error's rights of appeal by writ of error.

▮ It has been aptly said that the extent of participation in the actual trial that disqualifies an appellant under the statute from review by means of writ of error appears to be one of degree and, therefore, one who in a summary judgment proceeding filed an answer and an affidavit to the motion participated in the trial because of the peculiarities of the summary judgment procedure. *Thacker v. Thacker,* 496 S.W.2d 201 (Tex.Civ.App.—Amarillo 1973, writ dism'd). While in a conventional trial a writ of error review is not denied by participation where it is limited to a mere filing of an answer, *Petroleum Casualty Co. v. Garrison,* 174 S.W.2d 74 (Tex.Civ.App.—Beaumont 1943, writ ref'd w.o.m.), or to the filing of a motion for new trial, *Lawyers Lloyds of Texas v. Webb, supra,* but review by writ of error is denied to one who excepts in open court to the judgment. *Byrnes v. Blair,* 183 S.W.2d 287 (Tex.Civ.App.—El Paso 1944, no writ). Here though, the attorney for the Appellant was present, but it cannot be said that he participated in the proceedings for change of custody. We are of the opinion that the Appellant can maintain this form of appeal because of the events that occurred. The Appellant's attorney announced he was present for the purpose of taking a nonsuit in the Appellant's habeas corpus proceeding. At that time, the court cut counsel off in mid-sentence by stating that he would deny the motion for nonsuit without waiting for any explanation by Appellant's counsel. Thereupon, without calling any new cause number and asking for announcement of ready or any other official means of making an entry of appearance, the court summarily and without hearing of any evidence or testimony entered an order giving Appellee the custody of the child. Under the circumstances here presented, the Appellant's right to a nonsuit was absolute and unqualified. Rule 164, Tex.R. Civ.P.; 4 R. McDonald, Texas Civil Practice, Section 17.16.1, et seq. Nor can it be argued that the right to the nonsuit was abridged by the Appellee's motion filed for change of managing conservatorship, since the trial court attempted to proceed there without jurisdiction over the Appellant and in the teeth of the statute granting to the Appellant immunity from service. Section 14.10(d), Tex. Family Code Ann. (Vernon Supp.1982). In this connection, the recitations contained in the judgment that the Appellant appeared by and through her attorney of record are not conclusive and are in error as reflected by the statement of facts.

The mere physical presence of a party in the courtroom during a trial does not constitute participation sufficient to preclude writ of error. *Collins v. Collins,* 464 S.W.2d 910 (Tex.Civ.App.—San Antonio 1971, writ ref'd n.r.e.); *Specia v. Specia,* 292 S.W.2d 818 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.). We equate the presence of the Appellant's attorney to that of no more than a mere spectator, and we overrule the Appellee's motion to dismiss.

Without prolonging the discussion, we sustain the Appellant's Points of Error Nos. One, Two, Four and Five, No. One being to the effect that the trial court's order changing the custody was in error, as the trial court did not have jurisdiction of the matter since the Appellant had never been cited with service of said matter; Appellant's Point of Error No. Two being that there was no evidence presented to substantiate a finding that a modification of custody would be in the best interest of the child or that there had been a material change of circumstance; Appellant's Point of Error No. Four being that there was error in the order as the Appellant had not received thirty days notice of a hearing on the motion to modify as required by Section 14.-08(b), Tex.Family Code Ann. (Vernon Supp. 1982); and Point of Error No. Five being that there was error in the order as no hearing thereon was ever properly called or convened by the court and the motion to modify was improperly entertained by the trial court as part of the habeas corpus proceeding. There was no evidence in the record that Rusty had been in the Appellee's possession and control for at least six months immediately preceding the filing of the petition for habeas corpus. There was a reference to the agreement of October 4, 1980, but that did not establish when Rusty left the control of the Appellant. Appellant would not be subject to the provisions of Section 14.10(b)(2), Tex.Family Code Ann., but rather to Section 14.10(d) of the code which protected the Appellant from process while pursuing her writ of habeas corpus. The statement of facts contains no evidence. The judge's questions in the statement of facts reveal that the trial judge relied entirely upon out-of-court "evidence" somehow acquired by him to substantiate his rulings. The trial court arbitrarily and summarily changed custody without hearing any evidence, and it was obvious that he did so in order to punish the Appellant. An award of custody should never be made in order to punish a parent, but only to protect the best interest of the child. *Gunther v. Gunther,* 478 S.W.2d 821 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.).

The judgment of the trial court is reversed and judgment is here rendered that the Appellee take nothing by this proceeding, which was Cause Number 73–5540 in the trial court.

## OPINION ON MOTION FOR REHEARING

By motion for rehearing, the Appellee has, among other things, challenged the original disposition made by this Court, which reversed the judgment of the trial court and rendered judgment that the Appellee take nothing by the proceeding below, that being Cause No. 73–5540 on the docket of the trial court. The Appellee points out that when this Court sustained the Appellant's first point regarding the lack of service of process that the trial court was then without jurisdiction to proceed and the balance of Appellant's points become immaterial. The Appellee is correct in his argument. We withdraw our previous ruling on the points other than Point of Error No. One, as they are not reached.

The Appellant, having now appeared to attack the judgment, is presumed to have entered her appearance at the term of court at which the mandate shall be filed. Rule 123, Tex.R.Civ.Pro. The judgment of the trial court is reversed and the cause is remanded for a new trial.