Cherlyn Brannon MILNER, Relator,

v.

The Honorable Whayland
KILGORE, Respondent.

No. 13-86-314-CV.

Court of Appeals of Texas,
Corpus Christi.

July 17, 1986.

Rob Ramsey, Wharton, for relator.

Priscilla Craft, Jo Ann Ottis, J.L. Ziegen-hals, Bay City, Michael P. O'Reilly, Corpus Christi, for respondent.

Before NYE, C.J., and KENNEDY and SEERDEN, JJ.

OPINION

NYE, Chief Justice.

This is an original proceeding relating to child custody. Relator, Cherlyn Brannon Milner, is the mother of the child, Joseph Mark Brannon. Relator (mother) has petitioned the Court for writs of mandamus and prohibition, in essence seeking rescission of the March 27, 1986, order of the District Court of Matagorda County, 23rd Judicial District of Texas, Honorable Whayland W. Kilgore sitting.

Relator, Cherlyn Brannon Milner (the mother), was divorced from Joseph A. Brannon on October 10, 1984. The decree made her managing conservator of the only child of that marriage, Joseph Mark Brannon. The mother moved to Missouri on November 22, 1984. The child moved with her. They have resided there since that time. The child visited his maternal grandparents, Carol and David Brannon, inter-

venors in the cause below, in Bay City, Texas, from May 4, 1985, to June 23, 1985. He also visited the grandparents on December 15, 1985, and remains in their possession, under temporary orders issued by Judge Kilgore (the respondent), at present. Relator, the mother, after unsuccessful requests to her parents to return the child, returned to Bay City on March 1, 1986, where she was served with a temporary restraining order, granted March 6, 1986, restraining her from removing the child to Missouri, pending a hearing on a temporary injunction. The hearing, scheduled for March 13, was reset for March 17.

On March 17, the court ordered that the injunction hearing be postponed until March 18 at 1:30 p.m. It then heard the mother's special appearance and motion to dismiss for lack of jurisdiction. The court also ordered a writ of habeas corpus issued to produce the child before the court at 11:00 a.m. on March 17.

On March 27, the court entered an order which decreed, among other things, that it had jurisdiction of the modification proceedings, that the grandparents be appointed as temporary managing conservators, restricting the mother to visiting the child in the home of the grandparents during two weekends per month, ordering the mother to pay child support to her parents, denying her writ of habeas corpus to return the child, and other related orders.

■ "Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law where there is no adequate remedy at law." *Street v. Second Court of Appeals*, 715 S.W.2d 638, (Tex.1986), *quoting Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985); *see also* TEX.GOV'T CODE ANN. § 22.221 (Vernon Pamph.1986).

Jurisdiction to modify child custody ordinarily lies exclusively in the court of continuing jurisdiction, which is the same court that decrees the divorce of the parents and hears the suit affecting the parent-child relationship. TEX.FAM.CODE ANN. § 11.05(g) (Vernon Supp.1986). That subsection provides:

Except as provided by Subsection (d) of Section 11.53 of this code, a court may exercise its continuing, exclusive jurisdiction to modify all aspects of its decree, including managing conservatorship, possessory conservatorship, possession of and access to the child and support of the child. A court of this state may not exercise its continuing jurisdiction to modify any part of a decree if the child and all parties have established and continue to maintain their principal residence or home state outside this state. This subsection does not affect the power of the court to enforce and enter a judgment on its decree.

The stated exception, section 11.53(d), is the jurisdictional provision of the portion of the Family Code known as the Uniform Child Custody Jurisdiction Act (UCCJA). Section 11.53(d) provides:

Except on written agreement of all the parties, a court may not exercise its continuing jurisdiction to modify custody if the child and the party with custody have established another home state unless the action to modify was filed before the new home state was acquired.

"Home state" is defined in section 11.52(5) as follows:

the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

■ The uncontroverted evidence establishes that the child had acquired a new home state, Missouri, six months after moving there. He moved there with his mother on November 22, 1984. Although he visited his grandparents in Texas from May 4 to June 23, 1985, that was only a period of temporary absence from Missouri. By the express terms of section 11.-

52(5), temporary absence counts as part of the six-month period. The child did not return to Texas until December 15, 1985. The period from November 22, 1984, to December 15, 1985, more than adequately satisfies the home-state requirement.

The Matagorda County court apparently misconstrued the statute when it found in its March 27 order:

1) Respondent has at no time had six consecutive months of possession of the child the subject of this suit while residing in the State of Missouri;

2) Respondent has not acquired home state status in the State of Missouri pursuant to Section 11.52 and Section 11.53 of the Texas Family Code, generally....

Nevertheless, the trial judge contends that, even if the child's home state had become Missouri, evidence was heard by the trial judge that a serious and immediate question existed concerning the welfare of the child. This evidence, contends the trial judge, supports the taking of jurisdiction under TEX.FAM.CODE ANN. § 11.-53(a)(3). It also supports the denial of the writ of habeas corpus under TEX.FAM. CODE ANN. § 14.10.

The hearing on jurisdiction ended on March 17. The trial judge contends that the March 18 hearing on appointing the grandparents as temporary managing conservators was really part of the same hearing as the hearing on jurisdiction. The trial judge points to the fact that his order of March 27 says, "On the 17th day of March, 1986, and continuing on March 18th, came on to be considered...." However, the statements of facts for the two hearings do not bear this out. In fact, the jurisdiction hearing on March 17 could not have taken more than a couple of hours. The testimony and discussions comprise only about twenty-five pages. There are no deletions indicated. No recesses were taken. Furthermore, the trial court had no power to hear the motion for temporary orders unless it first determined it had jurisdiction under section 11.05 (its continuing, exclusive jurisdiction). *Cf. Klein v.*

*Cain,* 676 S.W.2d 165, 169 (Tex.App.— Amarillo 1984).

Finally, the statement of facts establishes that the hearing on the mother's special appearance and motion to dismiss for lack of jurisdiction concluded on March 17. At the close of the evidence (only the mother testified), the following discussion took place:

MR. RAMSEY: We rest on those two motions, Your Honor.

MS. CRAFT: Your Honor, I would like to call Carol Brandon [sic].

THE COURT: Do you disagree with the dates that she (the mother) gave? I don't think I need to hear her. I don't think I need to hear it.

MS. CRAFT: No, we do not disagree.

THE COURT: Okay, it would be repetitious and I don't need to hear her. *Any other evidence, then, on the jurisdiction? All right, anybody desire to make an argument?*

MR. RAMSEY: If you want to hear it, Your Honor, I will make it.

THE COURT: It's not necessary.

MR. RAMSEY: I would defer to the material that I furnished you previously, which is a summary of our argument on the jurisdiction of the subject matters.

THE COURT: *All right, I am going to rule I have jurisdiction to hear this case.*

MR. RAMSEY: The special appearance motion to dismiss for lack of jurisdiction, also?

THE COURT: That's correct (emphasis added).

Before that time, neither the father nor the grandparents had even alleged that a serious and immediate question existed concerning the welfare of the child. That allegation was filed by the grandparents at 4:10 p.m. on March 17. With no dispute being voiced by the opposition, we accept the representation of counsel for the mother that the allegation was filed after the hearing on jurisdiction.

Even if we treat the March 18 hearing as part of the March 17 hearing and consider

all of the testimony addressed in the March 18 hearing on temporary orders, that testimony failed to establish a serious and immediate question concerning the child's welfare. We also find that, even if the issue was properly before the court, no serious and immediate question concerning the welfare of the child existed. We are not unmindful of the broad discretion of the trial court in these matters. *See McElreath v. Stewart,* 545 S.W.2d 955, 958 (Tex. 1977). We also recognize the well-known admonition directed to appellate courts that mandamus will not lie absent a clear abuse of discretion by the trial judge. However, the situation contemplated under sections 11.53(a)(3) and 14.10 of the Family Code is one where the child is in imminent danger of physical or emotional harm and immediate action is necessary to protect the child. *See McElreath,* 545 S.W.2d at 958; *Soto-Ruphuy v. Yates,* 687 S.W.2d 19, 21 (Tex. App.—San Antonio 1984). Such fact situation does not here exist.

The testimony adduced at the hearings regarding the existence of a serious and immediate question all came from the hearing on temporary orders, held on March 18. The child's grandmother testified that the boy was disturbed, afraid, and withdrawn when he came to Texas to visit her, but that he became happier and more outgoing once he had been in her home for about a week. She also testified that he asked her for a gun so he could kill his mother and stepfather. She had seen the child's mother slap the child's face several times. A friend of the mother testified that she once saw the child's stepfather twist the child's arm behind his back to punish him. The grandparents and father wanted to litigate custody because the mother was planning to move to England with her present husband and take the child with her.

■ This evidence, while disturbing and tending to show that the child's well-being has been interrupted, does not present the kind of serious and immediate question contemplated by sections 11.53(a)(3) and 14.10 of the Family Code. The testimony focuses primarily on what the grandmother perceived as emotional harm to the child. This type of harm is ongoing and hard to quantify. It does not prove the existence of a dire emergency. *See Strobel v. Thurman,* 565 S.W.2d 238, 239 (Tex.1978). The testimony did not present a threat of such serious and *imminent* harm that would justify a Texas court taking jurisdiction of a matter that, by Texas statute, should have been brought in the child's home state (Missouri). *See McElreath,* 545 S.W.2d at 958. Neither does the possibility that the child will be moved outside the United States present a serious and immediate question concerning the welfare of the child. *Hui-Mei Wise v. Yates,* 639 S.W.2d 460, 461 (Tex.1982); *Soto-Ruphuy v. Yates,* 687 S.W.2d at 21.

The UCCJA was drafted to avoid just this kind of situation: a former spouse or other family member denying the out-of-state managing conservator possession of a child or children, and forcing the managing conservator, who has court-ordered custody of the child, to engage in costly litigation away from his or her home state. *See Jacobsen v. Haas,* 688 S.W.2d 634 (Tex. App.—Corpus Christi 1985).

■ In a habeas corpus proceeding, the trial court shall compel the return of the child to the relator if the relator is presently entitled to possession of the child by a court order. *Hui-Mei Wise v. Yates,* 639 S.W.2d at 461; TEX.FAM.CODE ANN. § 14.10(a) (Vernon Supp.1986). The proceeding cannot be used to relitigate the question of custody. *Whatley v. Bacon,* 649 S.W.2d 297, 300 (Tex.1983); *Jacobsen v. Haas,* 688 S.W.2d at 637. In this case, once the mother proved the prior court order entitling her to possession of the child, and where dire emergency did not exist, the issuance of the writ should have been automatic, immediate, and ministerial. *Strobel v. Thurman,* 565 S.W.2d 238, 239 (Tex.1978).

We hold that the able trial judge was incorrect in finding that he had jurisdiction to hear the modification suit and in refusing to grant the mother's petition for writ of habeas corpus to return the child to

her. We anticipate that the trial judge will act promptly and consistently with this opinion, and a writ of mandamus will issue only if he fails to do so.